[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 578.]

THE STATE EX REL. FREEDOM COMMUNICATIONS, INC., D.B.A. THE LIMA NEWS, *v.* ELIDA COMMUNITY FIRE COMPANY ET AL.

[Cite as *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.*, 1998-Ohio-411.]

*Public records—Mandamus to compel Elida Community Fire Company to provide relator access to fire company chief's investigative report and termination letters involving two volunteer firefighters—Writ granted, when.*

(No. 98-711—Submitted July 15, 1998—Decided August 12, 1998.)

IN MANDAMUS.

_____

{¶ 1} In 1949, respondent, the Elida Community Fire Company ("ECFC"), was created as a private nonprofit corporation "[t]o provide an efficient and effective organization for fire fighting to operate in the vicinity of Elida, which is located in Allen County, American Township, Ohio."

{¶ 2} ECFC contracts with certain Allen County townships, including American Township, to provide fire protection and emergency medical assistance. ECFC is composed of both paid employees and volunteers. ECFC reimburses volunteers for expenses on a per-call basis.

{¶ 3} In March 1998, both ECFC Chief Charles Bailey and the Bowling Green Police Department learned of an incident in which a male ECFC volunteer allegedly sexually assaulted a female ECFC volunteer at a firefighting training session in Bowling Green, Ohio. The police closed its investigation of the incident but did not file any charges. Chief Bailey prepared his own fourteen-page investigative report.

{¶ 4} Based on Chief Bailey's report, ECFC terminated the two volunteers' association with ECFC. Chief Bailey advised both volunteers of their termination

by letter and placed both the report and the termination letters in the ECFC volunteers' personnel files. Shortly thereafter, Chief Bailey permitted a reporter for relator, Freedom Communications, Inc., d.b.a. The Lima News ("Freedom"), to inspect these documents.

{¶ 5} In April 1998, Freedom requested copies of Chief Bailey's report and his termination letters. After ECFC refused, Freedom filed a complaint for a writ of mandamus to compel respondents, ECFC, Chief Bailey, and ECFC's records custodian, to provide access to the requested records under R.C. 149.43. Respondents filed an answer as well as a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

{¶ 6} This cause is now before the court for our determination under S.Ct.Prac.R. X(5).

_____

*Cory, Meredith, Witter, Roush & Cheney* and *Donald J. Witter;* and *John A. Bussian*, for relator.

*Spengler Nathanson P.L.L.*, *James M. Sciarini, Teresa L. Grigsby* and *Douglas A. Spidel*, for respondents.

_____

***Per Curiam.***

{¶ 7} We overrule respondents' motion to dismiss and grant Freedom a writ of mandamus to compel respondents to provide access to Chief Bailey's investigative report and termination letters. ECFC is a public office as defined by R.C. 149.011(A), and the records requested by Freedom are public records under R.C. 149.43, Ohio's Public Records Act.

{¶ 8} We reject respondents' argument that because ECFC is a private, nonprofit corporation that does not perform any function of government and is not inextricably intertwined or otherwise controlled by the townships, it is not a "public office," as defined by R.C. 149.011(A). R.C. 149.011(A) defines "[p]ublic office"

as "any state agency, *public institution*, political subdivision, *or any other* organized body, office, agency, institution, or *entity established by the laws of this state for the exercise of any function of government*." (Emphasis added.)

{¶ 9} An entity need not be operated by the state or a political subdivision thereof to be a public office under R.C. 149.011(A). The mere fact that ECFC is a private, nonprofit corporation does not preclude it from being a public office. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 260, 602 N.E.2d 1159, 1161.

{¶ 10} Second, ECFC is a public office under R.C. 149.011(A) because it is a public institution. An entity organized for rendering service to residents of the community and supported by public taxation is a public institution. *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 110, 529 N.E.2d 443, 445. In accordance with its articles of incorporation, ECFC serves its local community by providing fire protection, and it receives the vast majority of its income from township tax levies. See *id.*, quoting *Halaby v. Bd. of Directors of Univ. of Cincinnati* (1954), 162 Ohio St. 290, 298, 55 O.O. 171, 175, 123 N.E.2d 3, 7.

{¶ 11} In its current contract with American Township, ECFC agreed to provide firefighting and emergency services in return for ninety-five percent of the receipts from township fire levies and one hundred percent of the receipts from township rescue levies. In addition, the township provided ECFC with two rent-free buildings to house its fire and emergency equipment and to conduct its operations. The township remains responsible for building repairs and nonroutine maintenance.

{¶ 12} In 1997, ECFC received total income of $952,264.61, of which $923,446.77 (96.97% of total income) came from its contracts with townships, including $780,032.08 (81.91% of total income) from American Township. ECFC's remaining income, representing approximately three percent of its total

1997 income, came from donations and memorial gifts as well as emergency medical service billings for transporting nonresidents involved in automobile accidents. ECFC's receipts for 1998 reflect comparable figures.

**{¶ 13}** ECFC's articles of incorporation provide that one of its purposes is to "cooperate with township trustees in the maintenance of a fire fighting organization." ECFC is required to file annual financial statements with American Township Board of Trustees.

**{¶ 14}** We have relied on comparable factors to hold that certain entities are public offices for purposes of R.C. 149.43. *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 157, 684 N.E.2d 1239, 1241; *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313. In *Halaby*, we held that the University of Cincinnati is a public institution because it "stands in the same category as the city's water service, garbage-collection service, *fire-department service*, and its public-school service." (Emphasis added.) *Id.*, 162 Ohio St. at 298, 55 O.O. at 175, 123 N.E.2d at 7.

**{¶ 15}** Third, ECFC is performing a function that is historically a government function. R.C. 505.37(A) permits townships to establish rules to guard against the occurrence of fires and either to employ persons to maintain and operate firefighting equipment or to enter into an agreement with a volunteer fire company for the use and operation of firefighting equipment. As noted in *Laine v. Rockaway Beach* (1995), 134 Ore.App. 655, 664, 896 P.2d 1219, 1223, quoting *Ayres v. Indian Hts. Volunteer Fire Dept.* (Ind.1986), 493 N.E.2d 1229, 1235:

" 'Firefighting is a service that is uniquely governmental. The need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State and, as far as we can determine, in this Nation, from its very beginning.' "

**{¶ 16}** Finally, this finding is also consistent with the holdings of courts from other jurisdictions. See, *e.g., Schwartzman v. Merritt Island Volunteer Fire Dept.* (Fla.App.1978), 352 So.2d 1230, and *Laine*.

**{¶ 17}** Based on the foregoing, we hold that ECFC is a public office for purposes of R.C. 149.43. By so holding, we expressly reject respondents' contention that this result is tantamount to concluding that *all* private entities entering into government contracts are public offices whose records are subject to disclosure under R.C. 149.43.

**{¶ 18}** We also reject respondents contention that the requested records are not "records," as defined in R.C. 149.011(G), and therefore are not accessible as "public records" under R.C. 149.43. R.C. 149.011(G) broadly defines "records" to include "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 41, 693 N.E.2d 789, 792. The requested records document ECFC's investigation and decision to terminate the two volunteers' association with ECFC.

**{¶ 19}** Having held that ECFC is a public office and that Chief Bailey's investigative report and termination letters contained in the ECFC volunteers' personnel files are records, we turn to respondents' claim that these documents are exempt from disclosure because they are confidential law enforcement investigatory records under R.C. 149.43(A)(2)(a) and (c), donor profile records under R.C. 149.43(A)(1)(n), and records whose release is prohibited by the volunteers' constitutional right to privacy. See R.C. 149.43(A)(1)(p).

**{¶ 20}** None of respondents' claimed exemptions applies.

{¶ 21} First, the requested records are not confidential law enforcement investigatory records, as defined in R.C. 149.43(A)(2) and exempted from disclosure by R.C. 149.43(A)(1)(h). The R.C. 149.43(A)(2) phrase "law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature" refers " 'directly to the enforcement of the law, and not to employment or personnel matters ancillary to law enforcement matters.' " *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 143, 647 N.E.2d 1374, 1378, quoting *State ex rel. Lorain Journal Co. v. Lorain* (1993), 87 Ohio App.3d 112, 115, 621 N.E.2d 894, 896. The records here relate to employment and personnel matters rather than directly to law enforcement. *Id.*; see, also, *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 187-188, 648 N.E.2d 808, 810.

{¶ 22} Second, the requested records are not donor profile records exempted from disclosure under R.C. 149.43(A)(1)(n). R.C. 149.43(A)(6) defines "[d]onor profile record" as "all records about donors or potential donors *to a public institution of higher education* except the names and reported addresses of the actual donors and the date, amount, and conditions of the actual donation." (Emphasis added.) The ECFC volunteers here did not donate to a "public institution of higher education."

{¶ 23} Third, the ECFC volunteers' constitutional right of privacy does not exempt the requested records. Respondents have introduced no evidence establishing the same high potential for victimization that courts have relied on to exempt Social Security numbers or personal information about undercover officers from disclosure based on the constitutional right to privacy. Cf. *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 609-612, 640 N.E.2d 164, 167-169; *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055.

{¶ 24} Finally, ECFC waived its entitlement to the claimed exemptions by previously voluntarily disclosing the requested records to a reporter employed by

Freedom. See, *e.g., State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 265, 685 N.E.2d 1223, 1227-1228.

{¶ 25} Therefore, the requested records are subject to disclosure under R.C. 149.43.

{¶ 26} Based on the foregoing, we deny respondents' motion to dismiss. After the material factual allegations of Freedom's complaint and all reasonable inferences therefrom are construed most strongly in its favor, it is not beyond doubt that Freedom can prove no set of facts warranting the requested writ of mandamus.

{¶ 27} In addition, no further evidence or argument is necessary for resolution of the issues raised here. The parties agreed in mediation that if the court denied respondents' motion to dismiss, they would rely on their briefs and evidence concerning the motion and request a determination on the merits.

{¶ 28} Therefore, for the reasons previously stated, we grant Freedom a writ of mandamus to compel respondents to provide access to Chief Bailey's investigative report and termination letters. See, *e.g., State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 139, 684 N.E.2d 1222, 1226. We also find that attorney fees are appropriate here and order Freedom's counsel to submit a bill and documentation in support of its request for attorney fees, in accordance with DR 2-106(B). *Id.*

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

LUNDBERG STRATTON, J., concurs in judgment only.

———————————