THE STATE EX REL. WBNS TV, INC. *v.* DUES, JUDGE, ET AL.

[Cite as *State ex rel. WBNS TV, Inc. v. Dues,*
101 Ohio St.3d 406, 2004-Ohio-1497.]

(No. 2003–1476—Submitted January 12, 2004—Decided April 14, 2004.)

---

**Per Curiam.**

{¶ 1} On March 16, 2002, 13–year–old Brittanie Nicole Cecil was struck in her head by a hockey puck while she attended a Columbus Blue Jackets hockey game at Nationwide Arena in Columbus, Ohio. She died two days later.

{¶ 2} On March 27, 2002, Brittanie's mother, Jody L. Sergent, applied for authority to administer Brittanie's estate in the Preble County Court of Common Pleas, Probate Division. In April 2002, respondent Judge Wilfrid G. Dues of the probate court appointed Sergent administrator of the estate.

{¶ 3} On February 4, 2003, Sergent filed an application to approve the settlement and distribution of wrongful death and survival claims in the probate court. The filed application did not contain amounts of the settlement, reasonable attorney fees, reimbursement to the attorney for case expenses, and the allocations for the wrongful death and survival actions. Instead, the blanks for these amounts were marked confidential.

{¶ 4} Sergent simultaneously filed a motion to seal the application, any entry approving the settlement, and any report of distribution. In her memorandum in support of the motion to seal, Sergent stated that confidentiality of the settlement terms was part of the agreement and that Sergent wanted to avoid the same widespread publicity that had occurred after her daughter's death. On that same day, Judge Dues granted Sergent's motion and sealed the application to approve settlement and distribution, the entry approving the settlement and distribution, and the report of distribution. A sealed application that contained all of the amounts redacted from the filed version was submitted to the probate court.

{¶ 5} On February 14, 2003, Judge Dues conducted an in-chambers hearing on Sergent's application to approve settlement and distribution of wrongful death and survival claims. At that hearing, Judge Dues was advised that a settlement had been reached between the estate and the National Hockey League, its member clubs, the Columbus Blue Jackets, COLHOC Limited Partnership, d.b.a. Columbus Blue Jackets, Columbus Blue Jackets Foundation, JMAC Hockey, Inc., SMG, Nationwide Arena L.L.C., and Nationwide Realty Investors, Ltd. ("hockey entities"). Sergent and the hockey entities informed Judge Dues that no litigation between them had been filed and attorney fees would be 30 percent of any sum offered in settlement before expert witness depositions. The estate beneficiaries (Sergent and David Cecil, Brittanie's father) had agreed to split the remaining proceeds 60 percent for the mother and 40 percent for the father.

{¶ 6} Sergent and the hockey entities further advised Judge Dues that their settlement agreement included a confidentiality provision that required them to request the probate court to seal the amount of the settlement. Pursuant to the confidentiality provision, Sergent moved to seal the application to approve the settlement.

{¶ 7} On February 26, 2003, relator, WBNS TV, Inc. ("WBNS"), requested that respondents, Judge Dues and Preble County Probate Court Administrator Penny S. McGuire, provide it with unredacted copies of the following records in Brittanie's estate probate case: (1) application to approve settlement and distri-

bution of wrongful death and survival claims, (2) entry approving settlement and distribution of wrongful death and survival claims, (3) report of distribution, and (4) all documents used by the probate court to determine whether to approve Sergent's application. On February 27, 2003, McGuire rejected WBNS's request, stating that the motion and entry had been sealed and that the report of distribution had not been filed.

{¶ 8} On the same day that McGuire rejected WBNS's records request, WBNS moved to vacate Judge Dues's February 4, 2003 order sealing Sergent's application for approval of the settlement, the entry approving the settlement, and the report of distribution. WBNS and Sergent filed depositions, and Judge Dues held an evidentiary hearing on WBNS's motion on April 28, 2003.

{¶ 9} On June 17, 2003, Judge Dues denied WBNS's motion to vacate the sealing order. Judge Dues concluded that neither the Ohio Public Records Act, R.C. 149.43, nor the Ohio Constitution required the probate court to provide access to the requested records. In so holding, Judge Dues reiterated that the settlement amount would remain sealed, but that he would disclose other information included in Sergent's application, including the percentage of attorney fees (30 percent), the source of the funds available for settlement (insurance company), the percentage of distribution to the estate beneficiaries (60 percent to the mother and 40 percent to the father), and that no settlement funds came from the Columbus Blue Jackets. On June 24, 2003, Judge Dues denied Sergent's application for attorney fees expended by the estate to defend against WBNS's motion to vacate the sealing order.

{¶ 10} On August 19, 2003, WBNS filed this action for a writ of mandamus to compel Judge Dues and McGuire to immediately produce copies of or permit access to the requested records and for an award of attorney fees, costs, and expenses. After WBNS filed an amended complaint and respondent answered, we granted an alternative writ. *State ex rel. WBNS TV, Inc. v. Dues,* 100 Ohio St.3d 1429, 2003-Ohio-5396, 797 N.E.2d 510.

{¶ 11} The parties filed evidence and briefs. In addition, the Ohio Newspaper Association and Dayton Newspapers, Inc. filed amicus curiae briefs in support of WBNS, and the estate and the hockey entities filed amicus curiae briefs in support of Judge Dues and McGuire.

{¶ 12} WBNS failed to file a timely reply brief, but on December 16, 2003, it filed a revised motion for oral argument in which it responded to some of the arguments raised by Judge Dues and McGuire in their merit brief. On December 19, respondents designated new counsel to represent them, and on December 23, respondents filed a motion for oral argument.

{¶ 13} This case is now before us for a consideration of the parties' motions for oral argument as well as a consideration of the merits.

Oral Argument

{¶ 14} The parties move for oral argument. WBNS claims that oral argument is warranted because this case involves matters of great public importance, complex legal issues, a substantial constitutional issue, and a conflict between courts of appeals. Respondents assert that although no conflict exists, the other factors favor oral argument.

{¶ 15} We deny oral argument for the following reasons:

{¶ 16} First, S.Ct.Prac.R. IX does not require oral argument in original actions. See S.Ct.Prac.R. IX(2)(A) ("In an original action * * * the Supreme Court may order oral argument on the merits either *sua sponte* or in response to a request by any party"); *State ex rel. Potts v. Comm. on Continuing Legal Edn.* (2001), 93 Ohio St.3d 452, 454, 755 N.E.2d 886.

{¶ 17} Second, this case does not raise issues of either great public importance or legal complexity. Although the underlying events surrounding Brittanie's death generated widespread media coverage and public interest, this case has a significantly narrower focus: Does WBNS have a right of access under either R.C. 149.43 or the United States and Ohio Constitutions to settlement figures submitted to and considered by a probate court in determining whether to approve the settlement? This more limited question is of less public importance and legal complexity than the broader questions that the parties attempt to portray this case as involving.

{¶ 18} Third, although constitutional issues are raised, they are either insubstantial or need not be addressed in order to resolve this case. In fact, we have resolved comparable assertions of a constitutional right of privacy in public records cases without the necessity of oral argument. See, e.g., *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 707 N.E.2d 931; *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 661 N.E.2d 187.

{¶ 19} Fourth, there does not appear to be a direct conflict between the cited appellate cases. Cf. *Adams v. Metallica, Inc.* (2001), 143 Ohio App.3d 482, 758 N.E.2d 286, with *State ex rel. Sweeney v. Parma Hts.* (1994), 93 Ohio App.3d 349, 638 N.E.2d 614. A conflict does not exist when "the point upon which conflict exists had no arguable effect upon the judgment of the certifying court." *Pincelli v. Ohio Bridge Corp.* (1966), 5 Ohio St.2d 41, 44, 34 O.O.2d 55, 213 N.E.2d 356.

{¶ 20} Most important, the parties' and amici briefs are sufficient to resolve the issues raised. *State ex rel. Woods v. Oak Hill Community Med. Ctr.* (2001), 91 Ohio St.3d 459, 460, 746 N.E.2d 1108.

{¶ 21} Finally, it appears that the parties filed their motions to present additional argument. WBNS uses its revised motion as a substitute for the reply

brief it failed to timely file. And respondents use their motion to raise arguments and cite authorities that they did not raise in their merit brief, e.g., that the requested records are *not* public records, a point they *conceded* in their December 4, 2003 merit brief.

{¶ 22} Therefore, we deny the motions for oral argument and proceed to a consideration of the merits.

## Mandamus: R.C. 149.43

{¶ 23} WBNS seeks a writ of mandamus to compel Judge Dues and McGuire to provide it with access to the requested unredacted application for approval of the settlement agreement between Brittanie's estate and the hockey entities and related records. WBNS claims entitlement to these records through both R.C. 149.43, Ohio's Public Records Act, and the constitutional right of access under the First Amendment to the United States Constitution and Sections 11 and 16, Article I of the Ohio Constitution. We first consider the claimed entitlement to the requested records pursuant to R.C. 149.43.

{¶ 24} " 'Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act.' " *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.,* 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 10, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 11. In order to analyze WBNS's claim, we construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosing the records. *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 433, 732 N.E.2d 960.

{¶ 25} " 'Public record' means records kept by any public office." R.C. 149.43(A)(1). It is uncontroverted that the probate court is a public office. See R.C. 149.011(A) (" 'Public office' includes any state agency") and (B) (" 'State agency' includes * * * any court or judicial agency").

{¶ 26} Moreover, the estate's unredacted application for approval of its settlement with the hockey entities, which contains the settlement and attorney fee amounts, constitutes a record for purposes of R.C. 149.43. " 'Records' includes any document * * * received by * * * any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶ 27} Therefore, any record used by a court to render a decision is a record subject to R.C. 149.43. See *State ex rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 12, citing *State ex rel. Mothers Against Drunk Drivers v. Gosser* (1985), 20 Ohio St.3d 30, 20 OBR 279,

485 N.E.2d 706. Judge Dues used the redacted information from the sealed application to decide whether to approve the settlement and whether to grant the estate's motion for attorney fees. R.C. 2117.05 ("On the application of an executor or administrator for authority to compromise and settle a claim in favor of or against a decedent's estate, the probate court * * * may authorize or direct the executor or administrator to compromise and settle such claim on such terms as the court deems to be for the best interest of the estate").

{¶ 28} Furthermore, Judge Dues and McGuire effectively concede this point by stating that "[t]here is no question here that the Application itself is a public record."

{¶ 29} In fact, in his decision denying WBNS's motion to vacate the order sealing the application and related documents, Judge Dues conceded that the requested records were public records and that "[e]state proceedings which include wrongful death filings do not fall within any of the statutory confidential [exceptions]." "R.C. 149.43 mandates full access to all public records upon request unless the requested records fall within one of the specified exemptions." *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 444, 732 N.E.2d 969.

## Judicially Created Exceptions

{¶ 30} In his June 2003 decision, Judge Dues reasoned that notwithstanding the lack of any statutory exception for the requested records, he was authorized to "judicially create" an exception based on *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 673 N.E.2d 1360; *Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180; and *Adams,* 143 Ohio App.3d 482, 758 N.E.2d 286. He then proceeded to balance the right to public access against the interest of the estate and family to keep the settlement amount confidential and found that this balancing favored the estate and family.

{¶ 31} Notwithstanding the arguments of respondents and their amici, we have not authorized courts or other records custodians to create new exceptions to R.C. 149.43 based on a balancing of interests or generalized privacy concerns.

{¶ 32} Previously, in 1978, we adopted a balancing test that was comparable to the test Judge Dues adopted, to reconcile then-existing versions of the Public Records Act (R.C. 149.43) and Privacy Act (R.C. Chapter 1347) to determine when disclosure of personal information contained in a public record was permissible. *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St.2d 126, 10 O.O.3d 312, 383 N.E.2d 124, paragraph two of the syllabus ("In determining whether disclosure to the general public of personal information contained in an otherwise 'public record' would constitute an improper use of personal information under the provisions of R.C. Chapter 1347, the interest of the public's 'right

to know,' codified in R.C. 149.43, must be balanced against an individual's 'right of personal privacy,' codified in R.C. Chapter 1347").

{¶ 33} This balancing test was also comparable to that provided in the Federal Freedom of Information Act ("FOIA"), which allows federal agencies to withhold information contained in "personnel * * * and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Section 552(b)(6), Title 5, U.S.Code; *Dept. of the Air Force v. Rose* (1976), 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11, quoting S.Rep. No. 813 at 9 (" '[The unwarranted-invasion exemption] enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information' ").

{¶ 34} Following *Wooster Republican*, the General Assembly rejected the balancing test by clarifying that the Privacy Act does not limit R.C. 149.43. See *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 187, 610 N.E.2d 997, analyzing Am.Sub.S.B. No. 62, 138 Ohio Laws, Part I, 245; R.C. 149.43(D) ("Chapter 1347 of the Revised Code does not limit the provisions of this section").

{¶ 35} Moreover, because FOIA is inapplicable to state agencies and officers (Sections 551[1] and 552[f], Title 5, U.S.Code), and Ohio did not adopt a similar "clearly unwarranted invasion of privacy" exception in its Public Records Act, a judicially created personal-privacy exception could not be justified. *State ex rel. Warren v. Warner* (1999), 84 Ohio St.3d 432, 433, 704 N.E.2d 1228; *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 247–248, 643 N.E.2d 126.

{¶ 36} Consequently, since legislative rejection of the *Wooster Republican* balancing test, we have consistently repudiated attempts to resurrect it or comparable tests concerning policy matters in analyzing R.C. 149.43. See, e.g., *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 266, 602 N.E.2d 1159 ("It is the role of the General Assembly to balance the competing concerns of the public's right to know and individual citizens' right to keep private certain information that becomes part of the records of public offices. The General Assembly has done so, as shown by numerous statutory exceptions to R.C. 149.43[B], found in both the statute itself and in other parts of the Revised Code"); *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 172, 637 N.E.2d 911 ("in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure").

{¶ 37} "Although there may be good policy reasons to exempt settlement [figures], these policy considerations cannot override R.C. 149.43, because the

General Assembly is the ultimate arbiter of public policy."   Cf. *State ex rel. Cincinnati Enquirer,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. "Respondents cannot withhold public records simply because they disagree with the policies behind the law permitting the release of these records."   *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 54.

{¶ 38} Furthermore, the cases that Judge Dues cited in his decision denying access are inapposite.   In *WHIO–TV–7,* 77 Ohio St.3d 350, 673 N.E.2d 1360, we merely recognized that exemptions for work product and trial preparation records would not lose their exempt status because of the disclosure of these records in criminal discovery.   In *Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, we held that some of the requested records were not "records" for purposes of R.C. 149.43.   In *WHIO–TV–7,* we did not judicially create an exception, and in *Bond,* we did not address whether the subject records were excepted from disclosure.   Insofar as the court of appeals in *Adams,* 143 Ohio App.3d at 489, 758 N.E.2d 286, referred to *judicially created exceptions,* it did so in dicta, and that dicta is not persuasive.

{¶ 39} Therefore, Judge Dues erred in relying on a judicially created exception to withhold the settlement figures from disclosure under R.C. 149.43.

## Constitutional Right of Privacy

{¶ 40} The hockey entities and respondents [1] alternatively assert that the constitutional right of privacy prohibited the disclosure of the requested records. Respondents' failure to specify the exemption as a basis for withholding the requested records until after WBNS filed this mandamus action does not prohibit them from now raising it.   *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 447, 732 N.E.2d 969.

{¶ 41} R.C. 149.43(A)(1)(v) excepts from the Public Records Law "[r]ecords the release of which is prohibited by state or federal law."   Constitutional privacy rights are "state or federal law" that prohibit the disclosure of certain records. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164 (city employees' Social Security numbers); *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 707 N.E.2d 931 (police officers' personal information in personnel files); *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 725 N.E.2d 1144 (personal information concerning children, kept by city recreation department).

---

1.  In their brief, respondents adopted the substantive arguments raised in the hockey entities' amicus curiae brief.

{¶ 42} This argument is meritless. "Respondents have introduced no evidence establishing the same high potential for victimization that courts have relied on to exempt Social Security numbers or personal information about undercover officers [or children] from disclosure based on the constitutional right to privacy." *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 581–582, 697 N.E.2d 210; *Beacon Journal Publishing Co. v. Akron,* 70 Ohio St.3d at 612, 640 N.E.2d 164 ("high potential for fraud and victimization caused by the unchecked release of city employee SSNs"); *Keller,* 85 Ohio St.3d at 282, 707 N.E.2d 931 ("Police officers' files that contain the names of the officers' children, spouses, parents, home addresses, telephone numbers, beneficiaries, medical information, and the like should not be available to a defendant who might use the information to achieve nefarious ends"); *McCleary,* 88 Ohio St.3d at 372, 725 N.E.2d 1144 ("Because of the inherent vulnerability of children, release of personal information of this nature creates an unacceptable risk that a child could be victimized").

{¶ 43} Moreover, in *Beacon Journal Publishing Co. v. Akron,* 70 Ohio St.3d at 609, 640 N.E.2d 164, we emphasized that "[d]ue to the federal legislative scheme involving the use of SSNs, city employees have a legitimate expectation of privacy in their SSNs." There is no similar legislative scheme protecting settlement figures submitted to and approved by probate courts. Cf., e.g., R.C. 2317.023(D) (Provision making mediation communications confidential "does not affect * * * the status of a written settlement agreement as a public record under section 149.43 of the Revised Code"); *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 233, 729 N.E.2d 1182 (Collective bargaining agreements are not shielded from disclosure under R.C. 149.43 by R.C. 4117.21, which authorizes the closure of collective bargaining meetings); Evid.R. 408 ("This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations"); see, also, *State ex rel. Findlay Publishing Co. v. Schroeder* (1996), 76 Ohio St.3d 580, 582, 669 N.E.2d 835 ("in that there is no legislative scheme protecting the names of suicide victims from disclosure or incorporating the personal privacy exemption adopted by other states and the federal government, the right of privacy does not exempt the coroner's records from disclosure").

{¶ 44} Therefore, the constitutional right of privacy does not preclude disclosure of the sealed settlement figures. See, also, *Overstreet v. Lexington–Fayette Urban Cty. Govt.* (C.A.6, 2002), 305 F.3d 566, 575 (no constitutional privacy interest in financial affairs).[2]

---

2. The position of the United States Court of Appeals for the Sixth Circuit is not shared by all federal appellate circuits. See *Denius v. Dunlap* (C.A.7, 2000), 209 F.3d 944, 957, citing cases.

## R.C. 149.43 Right of Access to Sealed Records

{¶ 45} WBNS is thus entitled to the sealed records under R.C. 149.43. They are public records that are not subject to any exception. This holding is consistent with courts of other jurisdictions that have resolved comparable cases. See *Bank of Am. Natl. Trust & Sav. Assn. v. Hotel Rittenhouse Assoc.* (C.A.3, 1986), 800 F.2d 339, 344 ("the court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate"); *Jessup v. Luther* (C.A.7, 2002), 277 F.3d 926 (newspaper entitled to access to settlement agreement submitted to federal district court for approval and retained under seal in court's file); *Baltimore Sun Co. v. Mayor* (2000), 359 Md. 653, 755 A.2d 1130 (newspaper has right of access to record of confidential settlement of wrongful death action sealed by court).

## Constitutional Right of Access

{¶ 46} WBNS alternatively asserts that it is also entitled to the requested records based on the constitutional right of access under the First Amendment to the United States Constitution and Sections 11 and 16, Article I of the Ohio Constitution. Because WBNS is entitled to the records under R.C. 149.43, we need not consider WBNS's alternative constitutional claim. *State ex rel. Nationwide Mut. Ins. Co. v. Henson,* 96 Ohio St.3d 33, 2002-Ohio-2851, 770 N.E.2d 580, fn. 2 ("courts decide constitutional issues only when absolutely necessary").

## Attorney Fees

{¶ 47} WBNS also requests attorney fees. "The award of attorney fees under R.C. 149.43(C) is not mandatory." *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. In exercising discretion in this determination, "courts consider the reasonableness of the government's failure to comply with the public records request and the degree to which the public will benefit from release of the records in question." *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 54, 689 N.E.2d 25.

{¶ 48} We deny WBNS's request for attorney fees. Although respondents' reasons for withholding the sealed records from public disclosure were ultimately meritless, Judge Dues's decision to deny access evidenced a good-faith concern to protect the estate beneficiaries from unnecessary publicity.

{¶ 49} Moreover, the degree of public benefit from disclosure of the limited information sealed by Judge Dues, i.e., the settlement amounts, is questionable. Cf. *Wadd,* 81 Ohio St.3d at 55, 689 N.E.2d 25. Although WBNS claimed that the public had a significant interest in disclosure of this information, its news director, who had made the decision to request the records, testified that he was

not aware of any inquiry by any member of the public about the terms of the settlement between Brittanie's estate and the hockey entities.

{¶ 50} Under these circumstances, we deny WBNS's request for attorney fees.

### Conclusion

{¶ 51} WBNS has established its entitlement to the requested records under R.C. 149.43. We grant WBNS a writ of mandamus to compel respondents to provide access to the requested records. We deny WBNS's request for attorney fees and the parties' motions for oral argument.

Judgment accordingly.

MOYER, C.J., F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, J., dissents.

_____

Faruki, Ireland & Cox, P.L.L., Charles J. Faruki, Bradley D. Anderson and Karl E. Neudorfer, for relator.

Rebecca Ferguson, Preble County Prosecuting Attorney; Isaac, Brant, Ledman & Teetor, L.L.P., Mark R. Weaver, Mark Landes and Jeffrey A. Stankunas, for respondents.

Walter & Haverfield, L.L.P, and Kenneth A. Zirm, urging granting of the writ for amicus curiae Ohio Newspaper Association.

Coolidge, Wall, Womsley & Lombard Co., L.P.A., Robert P. Bartlett Jr. and Janice M. Paulus, urging granting of the writ for amicus curiae Dayton Newspapers, Inc.

Chappars Law Office and Timothy S. Chappars, urging denial of the writ for amicus curiae estate of Brittanie N. Cecil, deceased.

Porter, Wright, Morris & Arthur, L.L.P., Terrance M. Miller and David S. Bloomfield Jr., urging denial of the writ for amici curiae National Hockey League and all member clubs, Columbus Blue Jackets, COLHOC Limited Partnership, d.b.a. Columbus Blue Jackets, Columbus Blue Jackets Foundation, JMAC Hockey, Inc., JMAC, Inc., SMG, Nationwide Arena, L.L.C., and Nationwide Realty Investors, Ltd.