[Cite as *Geauga Cty. Pros. Office v. Munson Fire Dept.*, 2023-Ohio-4437.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| GEAUGA COUNTY PROSECUTOR'S OFFICE | Case No. 2023-00503PQ |
| Requester | Judge Lisa L. Sadler |
| v. | <u>DECISION AND ENTRY</u> |
| MUNSON FIRE DEPARTMENT | |
| Respondent | |

{¶1} In this public-records case, Respondent objects to a Special Master's Report and Recommendation and Requester moves to strike Respondent's objections. The Court overrules Respondent's objections and denies Requester's motion to strike for reasons that follow.

## I.     Background

{¶2} On July 27, 2023, Requester Geauga County Prosecutor's Office filed a public-records complaint against Respondent Munson Fire Department. Requester claimed that it requested, but never received, certain documents, namely, unredacted payroll reports (or an explanation with the basis for the redactions), "W-2sw," "1099s," paystubs, and financial reports. The Court appointed a Special Master who referred the case to mediation. After mediation failed to successfully resolve all disputed issues, the case was returned to the Special Master.

{¶3} On October 17, 2023, the Special Master issued a Report and Recommendation (R&R). The Special Master determined that Respondent is the functional equivalent of a public office and that the quasi-agency doctrine requires Respondent to provide the requested records. The Special Master recommends that (1) "Respondent be ordered to produce unredacted copies of the records filed for in camera review or to explain the redactions," (2) "Requester recover its filing fee and costs,

exclusive of attorney fees," and (3) "Respondent bear any remaining costs of this case." (R&R, 13.)

{¶4} On November 6, 2023, Respondent filed written objections to the Report and Recommendation. A copy of the objections "was provided via U.S. mail to Requester's counsel," according to a Certificate of Service accompanying Respondent's objections.

{¶5} On November 20, 2023, in a combined filing, Requester responded to Respondent's written objections and moved to strike Respondent's objections for failing to comply with requirements contained in R.C. 2743.75(F)(2). Requester served its filing on Respondent's counsel by certified mail, returned receipt requested, according to a Certificate of Service accompanying Requester's filing.

## II.    Law and Analysis

{¶6} The General Assembly has created an alternative means to resolve public-records disputes through the enactment of R.C. 2743.75. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 11. *See* R.C. 2743.75(A). Under Ohio law a requester "must establish entitlement to relief in an action filed in the Court of Claims under R.C. 2743.75 by clear and convincing evidence." *Viola v. Cuyahoga Cty. Prosecutor's Office*, 8th Dist. Cuyahoga No. 110315, 2021-Ohio-4210, ¶ 16, citing *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 32. It is a requester's burden to prove, by clear and convincing evidence, that the requested records exist and are public records maintained by a respondent. *See State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 8.

{¶7} A public-records custodian has the burden to establish the applicability of an exception to disclosure of a public record. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. In *Jones-Kelley*, the Ohio Supreme Court held:

> Exceptions to disclosure under the Public Records Act,
> R.C. 149.43, are strictly construed against the public-records
> custodian, and the custodian has the burden to establish the
> applicability of an exception. A custodian does not meet this

burden if it has not proven that the requested records fall squarely within the exception. (*State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006 Ohio 6714, 859 N.E.2d 948, P 30, followed.)

*Kelley* at paragraph two of the syllabus.

### A. Requester's motion to strike is not well taken.

{¶8} Requester moves the Court to strike Respondent's objections to the Report and Recommendation because Respondent failed to serve its objections by certified mail, as required by R.C. 2743.75(F)(2). *See* R.C. 2743.75(F)(2) ("[e]ither party may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested").

{¶9} Requester's motion to strike is unpersuasive for at least two reasons.

{¶10} First, in R.C. 2743.75 the General Assembly has not included a provision that allows a party to move to strike another party's objections to a report and recommendation. *See Kish v. City of Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 44 (the General Assembly is the ultimate arbiter of policy considerations relevant to public-records law and the judiciary's role is to interpret existing statutes, not rewrite them). *Compare* R.C. 2743.03(D) (providing that the Ohio Rules of Civil Procedure "shall govern practice and procedure in all actions in the court of claims, except insofar as inconsistent with this chapter").

{¶11} Second, notwithstanding that R.C. 2743.75(F)(2) requires service of an objection by certified mail, return receipt requested, it "is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits."[1] *De Hart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 192, 431 N.E.2d 644 (1982). Here, since Requester has filed a written response to the merits of Respondent's objections, the Court finds that Requester will not be prejudiced if the Court considers the merits of Respondent's objections—

---

[1] Pursuant to R.C. 2743.75(F)(2), "[e]ither party may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested."

despite Respondent's failure to follow requirements contained in R.C. 2743.75(F)(2) for service of its objections.

### B. Respondent's objections are not well taken.

{¶12} Pursuant to R.C. 2743.75(F)(2), any objection to a report and recommendation "shall be specific and state with particularity all grounds for the objection." In the objections, Respondent maintains:

(1) The Special Master "made the 'overly broad' statement that 'the Township is significantly involved in the Department's operation' and that the two are intertwined. The undisputed facts show that it is simply not the case. Munson Fire is a self-directed, independent, private corporation;"

(2) The Special Master "made inappropriate judgments on the credibility of assertions made by Munson Fire which are inappropriate in a case where there is no evidentiary hearing;" and

(3) The Special Master "ignored and apparently refused to consider factual and public policy considerations that weighed heavily in favor of a finding that Respondent was neither a 'functional equivalent' or 'quasi-agency' under Ohio law."

Upon careful consideration, the Court finds that Respondent's objections are unpersuasive.

### 1. The Special Master did not err when he found by clear and convincing evidence that Respondent was the functional equivalent of a public office.[2]

{¶13} Under Ohio law a private entity may be considered a public office for purposes of the Ohio Public Records Act. As used in R.C. Chapter 149, except as otherwise provided, the term "public office" "includes any * * * other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." Under R.C. 149.011(A) the term "public office," however, "does not include the nonprofit corporation formed under [R.C. 187.01 (JobsOhio)]." R.C.

---

[2]　　　Clear and convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

149.011(A). *Accord State ex rel. Freedom Communs. v. Elida Community Fire Co.*, 82 Ohio St.3d 578, 579, 697 N.E.2d 210 (1998), citing *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.*, 65 Ohio St. 3d 258, 260, 602 N.E.2d 1159 (1992) ("[a]n entity need not be operated by the state or a political subdivision thereof to be a public office under R.C. 149.011(A). The mere fact that [Elida Community Fire Company] is a private, nonprofit corporation does not preclude it from being a public office").

{¶14} In *State ex. rel. Oriana House, Inc. v. Montgomery,* 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, the Ohio Supreme Court set forth a "functional-equivalency test" with respect to private entities. In *State ex rel. Oriana House*, the Ohio Supreme Court stated:

1. Private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office.

2. In determining whether a private entity is a public institution under R.C. 149.011(A) and thus a public office for purposes of the Public Records Act, R.C. 149.43, a court shall apply the functional-equivalency test. Under this test, the court must analyze all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act.

*Id.* at paragraphs one and two of the syllabus.

{¶15} Upon review, the Court finds that the Special Master correctly determined by clear and convincing evidence that, by all pertinent factors, Respondent is a public office under the functional-equivalency test set forth in *State ex rel. Oriana House.* Specifically, under the presented evidence, as discussed below, Respondent satisfies three of the four factors identified in *State ex rel. Oriana House.*

    1) <u>Respondent performs a governmental function</u>.

{¶16} The provision of fire and emergency medical services constitutes a governmental function. *See* R.C. 2744.01(C)(2)(a) (a governmental function includes "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection"); *see also State ex rel. Freedom Communs. v. Elida*

*Community Fire Co.*, 82 Ohio St.3d 578, 580, 697 N.E.2d 210 (1998), quoting *Laine v. Rockaway Beach*, 134 Ore. App. 655, 664, 896 P.2d 1219, 1223 (1995), quoting *Ayres v. Indian Hts. Volunteer Fire Dept.*, 493 N.E.2d 1229, 1235 (Ind. 1986) ("""[f]irefighting is a service that is uniquely governmental. The need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State and, as far as we can determine, in this Nation, from its very beginning""").

{¶17} Here, in a contract between Respondent and Munson Township, Munson Township "recognizes the Fire Department as its sole and exclusive agent for fire and Emergency Medical Services." (Exhibit A to Motion To Dismiss/Verified Response, Contract, Article 2, Recognition, effective December 4, 2018.)

2) Four-fifths of Respondent's funding is from public sources.

{¶18} Respondent represents that it "receives approximately 80% of its funding from public sources." (Motion To Dismiss/Verified Response, 7.)   Respondent also represents that it "receives approximately twenty percent (20%) of its funding for its ambulance services from insurance companies and individuals." (Id.)  Thus, four-fifths of Respondent's funding is from public sources.

3) Munson Township is involved in the regulation of Respondent.

{¶19} Respondent asserts that it is a self-directed, independent, private corporation and that it is not "intertwined" with Munson Township.  Under the contract between Munson Township and Respondent, "[e]xcept as specifically limited by the explicit provisions of this Contract, [Respondent] retains full right and responsibility to make all decisions regarding the day-to-day activities of the Fire Department and all aspects of its operations, employment and employees to provide the highest level of fire and EMS protection possible."  (Exhibit A to Motion To Dismiss/Verified Response, Contract, Article 2, Recognition, effective December 4, 2018.)

{¶20} While Respondent may be a self-directed, independent, private corporation, Munson Township nevertheless is involved in the regulation of Respondent under the contract between Munson Township and Respondent. For example, pursuant to Article 3, Respondent

shall provide to the Township any updates to its Employee Policy Manual, if such updates have been made and exist since the last update provided to the Township.

From the date of the completion of the next risk-related standards compliance audit, the Fire Board of Trustees shall provide a new risk-related standards compliance audit every two (2) years to the Township Board of Trustees. This internal audit shall provide a system to determine the extent to which the Fire Department is following the National Fire Protection Association (NFPA) standards:

• NFPA 1500 Standard for Fire Department Occupational Health and Safety.

• NFPA 1720 / 1710 Standard for the Organization and Deployment of Fire Suppression Operations, Emergency Medical Operations, and Special Operations.

• NFPA 1001 Standard for Fire Fighter Professional Qualifications.

• NFPA 1002 Fire Apparatus Driver/Operator Professional Qualifications.

• NFPA 1021 Fire Officer Professional Qualifications.

• NFPA 1031 Standard for Professional Qualifications for Fire Inspector, Fire Investigator and Fire Prevention Officer.

The Fire Department Board of Trustees shall provide, annually to the Township Trustees short, medium and long-range plans to establish goals objectives, apparatus replacement and staffing. These planning reports shall provide an outline of anticipated future growth of the Fire Department.

{¶21} Additionally, under Article 4 of the Contract, Respondent "shall assure the Township (in writing) that all high priority target hazards in the Township will be inspected at least annually."  And under Article 5 of the Contract, Respondent "shall establish a maintenance program for all Fire Department vehicles and repairs shall be performed by the Fire Department or an established repair business. The Fire Department will provide the Township Fiscal Officer with the appropriate itemized documentation to establish that the work has been completed."

**{¶22}** Additionally, pursuant to Article 7 of the Contract,

It is further agreed that [Respondent] will insure all apparatus for loss or damage by fire, theft, or other casualty and the Township shall be named an additional insured party on such insurance. [Respondent] also agrees to procure liability insurance for injury to persons and property in the minimum amount of Two (2) Million dollars ($2,000,000.00) per occurrence and include both the Township and Fire Department Boards of Trustees as an additional insured on such insurance. [Respondent] agrees to provide to the Township annual copies or updated copies, as they may occur, of all insurance policies carried by the Fire Department.

And, under Article 16 of the Contract,

On or before January 30th of each new year the Fire Department shall provide to the Township an accounting of:

• All tax and EMS dollars received during the previous tax year

• The December 31st cash balances of all tax and EMS dollar accounts

• Total tax and EMS dollar expenditures transacted during the tax year

• Total tax and EMS dollars accrued and on account for capitalization toward vehicle and apparatus purchase and replacement

• Total tax and EMS dollars accrued and on account for capitalization toward other non-operational expenditures

• Total tax and EMS dollars accrued and on account for capitalization toward the1st quarter Fire Department expenditures of the new tax year. Such amount shall be calculated as the total tax and EMS dollar expenditures transacted during the previous tax year divided by four (4) and rounded up to the nearest one hundred ($100.00) dollars.

**{¶23}** A review of Respondent's contract with Munson Township thus demonstrates by clear and convincing evidence that Munson Township is significantly involved in Respondent's operation. The Court rejects Respondent's claim that the Special Master "made the 'overly broad' statement that 'the Township is significantly involved in the Department's operation' and that the two are intertwined."

4) No evidence supports a determination that Respondent was created by the government or to avoid the requirements of the Public Records Act.

{¶24} The Special Master stated: "Neither party has submitted evidence on this point. This factor does not support functional equivalence."  Based on the Court's review, the Court agrees with the Special Master's determination.

{¶25} After all the factors outlined in *State ex rel. Oriana House* are analyzed, an analysis of the submitted evidence shows by clear and convincing evidence that Respondent is the functional equivalent of a public office for purposes of the Ohio Public Records Act.

{¶26} Respondent urges, however, that the Special Master failed to consider other "pertinent factors" in his analysis, including the a past revocation of Respondent's 501c4 status by the Internal Revenue Service in 2017 and a motion by Munson Township to "return operation of Munson Fire to the newly-formed Munson Fire Department Board of Trustees."  Despite Respondent's urgings, the Court does not conclude that the Special Master failed to give due consideration to these factors, as Respondent claims.

{¶27} Respondent also challenges the Special Master's application of *State ex rel. Freedom Communs. v. Elida Community Fire Co.*, 82 Ohio St.3d 578, 697 N.E.2d 210 (1998), and the Special Master's reliance on *State ex rel. Harm Reduction Ohio v. Oneohio Recovery Found.*, 2023-Ohio-1547, and *State ex rel. Stys v. Parma Community Gen. Hosp.*, 93 Ohio St.3d 438, 439, 755 N.E.2d 874 (2001).  Upon consideration of these arguments, the Court finds that the Special Master did not misapply *Elida Community Fire Company*, *Oneohio Recovery Foundation*, or *Parma Community General Hospital*.

{¶28} In sum, after all pertinent factors are analyzed, the submitted evidence shows by clear and convincing evidence that Respondent is the functional equivalent of a public office for purposes of the Ohio Public Records Act.

## 2. The Special Master did not err in applying the "quasi-agency test."

{¶29} In *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19, ¶ 14, the Ohio Supreme Court described the "quasi-agency test," stating that "in cases in which a public office receives a request for records that are in the possession of a private entity, we have articulated a 'quasi-agency' test for

determining whether the records are connected to the public office's delegation of its duty to the private entity." In *State ex rel. Armatas* the Ohio Supreme Court explained:

> The quasi-agency theory applies when "'(1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose.'" *Am. Civ. Liberties Union of Ohio* at ¶ 53, quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990). The caselaw demonstrates * * * that when a requester has adequately proved the first prong of the quasi-agency test, the requester has met his burden: proof of a delegated public duty establishes that the documents relating to the delegated functions are public records.

*State ex rel. Armatas* at ¶ 16.

{¶30} Here, Requester seeks records that document compensation paid to individuals who provide fire protection to Munson Township, a governmental function of Munson Township. Requester thus has satisfied the first prong of the "quasi-agency" test, as stated in *Armatas*, and has met its burden of proof under the first prong of the "quasi-agency" test. *See ex rel. Armatas* at ¶ 16. Requester thus has satisfied its burden of proof that the records about compensation that Requester seeks are public records. *Id.*

{¶31} Respondent's contention that the Special Master misapplied the "quasi-agency test" is unpersuasive.

## 3. The Special Master did not make inappropriate judgments on the credibility of assertions made by Respondent.

{¶32} Respondent contends that the Special Master unfairly and improperly dismissed as "speculative" the Munson Fire Department's Fire Chief and Treasurer's affirmations that a finding that Respondent is a functional equivalent of a public agency and quasi-agency would lead to administrative difficulties. Respondent further contends that the Special Master's Report and Recommendation requires a small fire department with twenty-four (24) employees to bear the brunt and costs of unnecessarily responding to public information requests from disgruntled members of the public who sometimes

make overly broad requests that have no legitimate connection to the needs of the community.

**{¶33}** Respondent's arguments are unpersuasive. To the extent that the Munson Fire Department's Fire Chief and Treasurer's affirmations are based on theoretical rather than demonstrable knowledge, these affirmations reasonably may be viewed as "speculative." Moreover, in *State ex rel. Bott Law Group, LLC v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219, ¶ 21, the Tenth District Court of Appeals stated,

> While we recognize that [R.C. 149.43(B)(1)] imposes a sizeable burden upon responding agencies[,] * * * "'[n]o pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the [public agency] to evade the public's right to inspect and obtain a copy of public records within a reasonable time.'" *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.*, 39 Ohio St.3d 108, 111, 529 N.E.2d 443 (1988), quoting *State ex rel. Beacon Journal Publishing Co. v. Andrews*, 48 Ohio St.2d 283, 289, 358 N.E.2d 565 (1976). Indeed, a public agency "is under a statutory duty to organize [its] office and employ [its] staff in such a way that [its] office will be able to make [public] records available for inspection and to provide copies when requested within a reasonable time." *Id.*, quoting *State ex rel. Beacon Journal*. *See* also *State ex rel. Hartkemeyer v. Fairfield Twp.*, 12th Dist. No. CA2012-04-080, 2012-Ohio-5842, ¶ 25.

**{¶34}** Although the Court is sensitive to Respondent's view that it may be overburdened by requests for public records, the Court determines that the Special Master did not err by the use of the term "speculative."

### III.    Conclusion

**{¶35}** For reasons set forth above, the Court overrules Respondent's objections, denies Requester's motion to strike, and adopts the Special Master's Report and Recommendation, excepting the recommendation that Respondent be ordered to explain the redactions. The Court orders Respondent to produce unredacted copies of the records filed for in camera review to Requester. Requester is entitled to recover from

Respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that are incurred by the Requester, excepting attorney fees. Court costs are assessed against Respondent.  The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
LISA L. SADLER
Judge

**Filed November 28, 2023**
**Sent to S.C. Reporter 12/7/23**