[Cite as *Geauga Cty. Prosecutor's Office v. Munson Fire Dept.*, 2023-Ohio-3958.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| GEAUGA COUNTY PROSECUTOR'S OFFICE | Case No. 2023-00503PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| MUNSON FIRE DEPARTMENT | |
| Respondent | |

{¶1} This matter is before the special master for a R.C. 2743.75(F) report and recommendation. The special master recommends that (1) Respondent be ordered to produce unredacted copies of the records filed for in camera review or to explain the redactions, (2) that Requester recover its filing fee and costs, and (3) that Respondent bear any remaining costs of this case.

### I. Background

{¶2} Respondent Munson Fire Department ("the Department") is a non-profit corporation that contracted with Munson Township ("the Township") to provide fire protection and emergency medical services. It is the Township's de facto fire department, as discussed more fully below. *Respondent's Evidence*, filed September 15, 2023, pp. 6-12; *Motion to Dismiss/Verified Response of Munson Fire Department, Inc*, filed September 26, 2023 ("*MTD*"), pp. 1-2.[1]

{¶3} The Geauga County Prosecutor's Office ("the Prosecutor") made two public records requests to the Department. The Department denied that it is a public office subject to the Public Records Act, but provided some records responsive to those requests in redacted form. When pressed about the redactions, the Department declined to explain the redactions or to produce unredacted copies, reiterating its position that it is

---

[1]     All references to specific pages of matters publicly filed in this case are to pages of the PDF copies posted on the Court's on-line docket.

not a public office subject to the Public Records Act. The Prosecutor brought this case to obtain unredacted copies of those records or an explanation for the redactions. *Complaint*, filed July 27, 2023, pp. 4, 5, 9.

{¶4} The case was not resolved through mediation, so the special master set a schedule for the parties to submit evidence and memoranda supporting their positions. R.C. 2743.75(E)(3)(e); *Order*, entered August 31, 2023; *Order*, entered October 3, 2023. The parties have made those filings and the case is ripe for decision.

## II. Analysis.

### A. The Department is obligated to produce unredacted copies of the responsive records or to explain the basis for its redactions.

{¶5} R.C. 149.43(B)(1) requires a "public office" to produce public records upon receiving a proper request. R.C. 149.43(B)(1) and (3) require a public office to explain any redactions it makes to records it produces. The Department does not claim that the Prosecutor's requests were defective or dispute that the materials at issue would be public records, albeit subject to redactions. It instead argues that R.C. 149.43(B)(1) and (3) do not apply to it because it is a private entity.

{¶6} The fact that an entity is private does not automatically exempt it from the Public Records Act; the Act applies to private entities in several circumstances where their activities impact public affairs. It applies to records of a private entity formed pursuant to Ohio law to exercise a function of government. *Schiffbauer v. Banaszak*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52; 2006 Ohio Atty. Gen. Ops. No. 2006-37, 2006 Ohio AG LEXIS 50, at *15. It applies to records of a private entity that is the "functional equivalent" of a public office. *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193. The "quasi-agency" doctrine applies the Act to specific records in a private entity's possession that are related to a delegated public function. *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19. Finally, R.C. 149.431(A) makes records related to a non-profit entity's contracts with a public body accessible through R.C. 149.43(B).

{¶7} The Prosecutor asserts two bases for applying the Act to the Department. It claims that the Department is the functional equivalent of a public office, and invokes the quasi-agency doctrine.  Both bases are present here.

### 1.  The Department is the functional equivalent of a public office.

{¶8} The courts consider multiple factors in determining whether a private entity is the functional equivalent of a public office, but the analysis is centered around four inquiries:

- Does the entity perform a governmental function?
- What level of public funding does the entity receive?
- What is the extent of government involvement in or regulation of the entity?
- Was the entity created by the government or to avoid the requirements of the Public Records Act?

*Oriana*, 110 Ohio St.3d 456, ¶¶ 23, 25; *Schutte v. Gorman Heritage Farm Found.*, Ct. of Cl. No. 2018-01029PQ, 2019-Ohio-1611, ¶ 7, adopted 2019-Ohio-1818 (McGrath, J.), An otherwise private entity can be a functional equivalent without all four inquires suggesting that result, and no one inquiry is automatically dispositive. *State ex rel. Harm Reduction Ohio v. Oneohio Recovery Found.*,__ Ohio St.3d __, 2023-Ohio-1547, __ N.E.2d ___, ¶¶ 23, 32. The functional equivalence analysis starts with a presumption that the private entity is not a functional equivalent. That presumption must be overcome with clear and convincing evidence. *Oriana,* 110 Ohio St.3d 456, ¶ 26.

### a. The Department performs a governmental function.

{¶9} The Department provides fire and emergency medical services for the Township.  Statutes and case law conclusively establish that those are governmental functions.

{¶10} The Revised Code requires townships to provide fire protection in some form and gives them inherently governmental powers to further fire safety. They may legislate substantive fire safety standards, levy taxes, and appropriate property to further fire safety. R.C. 505.37(E), R.C. 505.38, R.C. 505.373, R.C. 505.39. The Township has in

fact levied taxes for fire protection since at least 2004.[2] Consistent with that, R.C. 2744.01(C)(2)(a) explicitly states that fire protection and emergency medical services are governmental functions.

{¶11} The cases have imported R.C. 2744.01(C)(2)(a)'s statement into the functional equivalent analysis. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153 (5th Dist.), ¶ 38; *S/O ex rel. Am. Ctr. for Economic Equality v. Jackson*, 2015-Ohio-4981, 53 N.E.3d 788 (8th Dist.), ¶ 20. The Supreme Court has independently held that fire protection is a governmental function, albeit in a case that preceded the functional equivalence standard. *State ex rel. Freedom Communs. v. Elida Community Fire Co.*, 82 Ohio St.3d 578, 580, 697 N.E.2d 210 (1998).

{¶12} This factor supports functional equivalence.

### b. The Department receives significant amounts of public funding and does so in a way that reinforces its public role.

{¶13} Two considerations are relevant here.

{¶14} The first is the relative proportion of the entity's funding that comes from public sources. *Harm Reduction*, __ Ohio St.3d __, 2023-Ohio-1547, ¶¶ 22, 23. Logic dictates that the larger the portion, the more likely it is that the entity is the functional

---

[2] Ohio Auditor of State, *Munson Township, Geauga County, Regular Audit for Year ended December 31, 2004*, ("*2004 Audit*"), p. 7; Ohio Auditor of State, *Munson Township, Geauga County, Regular Audit for Year ended December 31, 2005*, ("*2005 Audit*"), p. 20; Ohio Auditor of State, *Munson Township, Geauga County, Regular Audit for Years ended December 31, 2007 & 2006*, ("*2007 & 2006 Audit) Audit*"), pp. 3, 18; Ohio Auditor of State, *Munson Township, Geauga County, Regular Audit for Year ended December 31, 2014*, ("*2014 Audit*"), p. 3; Ohio Auditor of State, *Regular Audit of Munson Township for the years ended December 31, 2021, and 2020,* ("*2021 & 2020 Audit*"), pp. 5, 18. All references to specific pages of those audits are based on the internal pagination of the audits. Those audits are available at:

https://ohioauditor.gov/auditsearch/Reports/2007/Munson_Township_04-Geauga.pdf  (2004)

https://ohioauditor.gov/auditsearch/Reports/2007/Munson_Township_05-Geauga.pdf (2005)

https://ohioauditor.gov/auditsearch/Reports/2009/Munson_Township_07_06-Geauga.pdf (2007 & 2006)

https://ohioauditor.gov/auditsearch/Reports/2014/Munson_Township_13-12-Geauga.pdf  (2014)

https://ohioauditor.gov/AuditSearch/Reports/2022/Munson_Township_2021_20-Geauga_FINAL.pdf (2021 & 2020) (all accessed October 16, 2023).

The special master takes judicial notice of those audits because they are certified and the parties either have not objected to or are not prejudiced by that action. See *State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs.*, 165 Ohio St.3d 590, 2021-Ohio-4031, 180 N.E.3d 1135, ¶ 2, n. 3.

equivalent of a public office. In this case, the Department swears that approximately 80% of its funding comes from public sources. *MTD*, p. 7.[3] That is higher than levels that this and other courts found sufficient to support functional equivalence. *Sheil v. Horton*, Ct. of Cl. No. 2017-00772PQ, 2018-Ohio-1720, ¶ 9, (32% supports functional equivalence), *Aff'd*, 2018-Ohio-5240, 117 N.E.3d 194 (8th Dist.), ¶ 30. See also *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 2012-Ohio-2074, 972 N.E.2d 607 (1st Dist.), ¶ 26 ("We further agree with the magistrate's conclusion that the city's funding of CFMC — which totaled nearly half of its revenue in the fiscal year ending June 30, 2010—is not just significant, but overwhelming").

{¶15} The second consideration is the way that the public funding is calculated. Ohio is not alone in adopting the functional equivalence test. *Oriana*, 110 Ohio St.3d 456, ¶ 21. Courts employing that approach elsewhere are more likely to find functional equivalence if the public funding is transferred in bulk, rather than on a set fee for specific instance of service basis *Telford v. Bd. of Commrs.*, 95 Wash.App. 149, 164, 974 P.2d 886 (1999); *Greenwich Emergency Med. Serv. v. Freedom of Information Comm.*, Super.Ct. No. HHBCV176039788S, 2019 Conn. Super. LEXIS 1777 (June 18, 2019), **20-21. See also, *Weston v. Carolina Research & Dev. Found.*, 303 S.C. 398, 404, 401 S.E.2d 161 (1991).  That is consistent with the Ohio law principle that a private for-profit entity does not become subject to the Public Records Act simply by contracting with a public body. *Oriana*, 110 Ohio St.3d 456, ¶ 29; *Elida Community Fire Co.*, 82 Ohio St.3d at 580. The Department's public funding comes from a complete transfer of the Township's Fire and EMS funding; it is not calculated based on how many runs the Department makes or how many other instances of services it performs. *Respondent's Evidence*, p. 11.

{¶16} This factor also supports functional equivalence.

### c. The Township is significantly involved in the Department's operation.

{¶17} This factor considers "the extent of government involvement *or* regulation" of the private entity. *Oriana*, 110 Ohio St.3d 456, ¶ 22 (emphasis added). That disjunctive

---

[3]      Although statements in unsworn memoranda are not evidence, the *MTD* is verified. It is therefore the equivalent of an affidavit.

phrasing is worth noting; it indicates that *either* significant involvement *or* regulation can support functional equivalence. *Sheil v. Horton*, 2018-Ohio-5240, 117 N.E.3d 194 (8th Dist.), ¶ 35. See also, *Harm Reduction*, __, Ohio St.3d __, 2023-Ohio-1547, ¶ 30, 31 (noting the disjunctive phrasing of another functional equivalence factor). An entity is likely to be a functional equivalent if it is closely intertwined with a government body, even if that body does not control the entity's day-to-day actions. *Sheil* 117 N.E.3d 194, ¶¶ 32-35. Undisputed facts establish that the Township and the Department are intertwined on multiple levels.

{¶18} The Department has a close, fiduciary, relationship with the Township. It has been expressly designated as the Township's "*agent* for fire and Emergency Medical Services." *Respondent's Evidence*, p. 5 (emphasis added). An agent is a fiduciary of its principal, and that is an inherently close relationship. *Restatement of the Law 3d, Agency*, Section 1.01, Comment e. Indeed, the Supreme Court has noted the importance of the private entity's fiduciary duties to the public body (or lack thereof) in evaluating whether a private entity is a public office. *State ex rel. Stys v. Parma Community Gen. Hosp.*, 93 Ohio St.3d 438, 441, 755 N.E.2d 874 (2001).

{¶19} The Township and the Department are operationally intertwined in multiple ways:

- The Township provides the facilities the Department operates from. *Respondent's Evidence*, p. 8.

- The Township has significant control over the Department's equipment. It leases some of that equipment for the Department. *2014 Audit*, p. 8; *2021 & 2021 Audit*, pp. 10-11, 23-24. Some of the Department's equipment is titled in the Township's name. *2005 Audit*, p. 17; *2007 & 2006 Audit*, p.23; *Respondent's Evidence*, p. 7. The Department must verify to the Township the details of its actions to maintain its equipment. *Id.*, p. 7.

- The Township must approve certain of the Department's significant expenditures. *Id.*, pp. 8, 10.

- The Department must apprise the Township of changes to its employee policies. *Id.*, p. 6.

- The Department must include the township in its insurance coverage and keep the township apprised of its insurance policies. *Id.*, p. 7.

{¶20} Their close relationship is also reflected in the Township's public persona. The Township's website presents the Department as a part of the Township's overall operations. Munson Township, *Munson Fire Department*, http://www.munsontwp.com/New_Site/FireDepartment.html (accessed October 16, 2023). The Auditor of State considers their interactions, the Township funds that support the Department, and the impact of those funds on the Township's overall financial status in its audits of the Township. *2004 Audit*, pp. 7,8; *2005 Audit*, pp. 3, 5, 7, 17, 20, 23; *2007 & 2006 Audit*, pp. 3, 5,12, 15, 17, 20, 33, 34, 38, 43; *2014 Audit*, pp. 3, 5, 7, 8, 12, 14, 17, 19; 21; *2021 & 2020 Audit*, pp. 4, 5, 10, 11, 17, 18, 23, 24, 25. This and other courts have held that such matters support functional equivalence. *Sheil*, 2018-Ohio-1720, ¶¶ 12, 13; *Aff'd*, 2018-Ohio-5240, 117 N.E.3d 194 (8th Dist.), ¶ 33.

{¶21} In sum, the interactions between the Department and the Township do not evince an arm's length, vendor-customer or independent contractor relationship. Instead, they are in a fiduciary relationship. The Department likely could not operate without the Township because the Township controls the Department's facilities and equipment. Their close relationship is presented to the public and analyzed in the Township's audits.

{¶22} The Department and the Township are indeed intertwined. This factor supports functional equivalence.

    d. **There is no evidence that the Department was formed by government or to evade the Public Records Act**.

{¶23} Neither party has submitted evidence on this point. This factor does not support functional equivalence.

    e. **The weight of the factors clearly and convincingly establishes functional equivalence**.

{¶24} The special master finds that those and other factors clearly and convincingly establish that the Department is the functional equivalent of a public office. There are four bases for that conclusion.

{¶25} *First*, three out of the four basic factors support that conclusion. This is not a close case when considered on that basis.

{¶26} *Second,* equivalence is supported by the complete transfer of the government function involved. The cases suggest that equivalence is more likely when a public body makes a wholesale delegation of its duties to a private entity. *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936, ¶ 28; *Harm Reduction,* __ Ohio St.3d __, 2023-Ohio-1547, __ N.E.3d __ ¶ 34. See also, *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137, 684 N.E.2d 1222 (1997) ("Government entities cannot conceal public records by delegating a public duty to a private entity"). That makes sense; rejecting equivalence in that context forecloses public scrutiny of a whole area of government operations, a result at odds with the fundamental purpose of the Public Records Act and the democratic principles it furthers.  As one court applying the functional equivalence test elsewhere observed, "the public's fundamental right to scrutinize the performance of public services and the expenditure of public funds should not be subverted * * * merely because public duties have been delegated[.]" *Memphis Publishing Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67, 78 (Tenn.2002).

{¶27} That is what we have here. This is not a case where government simply hired a vendor to help it continue to perform its functions. Instead, it involves a transfer of *all* aspects of a basic function, transferring *all* funding and *all* functionality to the private entity.  It is an understatement to say that the Department is the "equivalent" of the Township in this area; the reality is that it *is* the Township for all intents and purposes.

{¶28} The importance of this consideration is heightened by the public's strong interest in the function delegated and the scale of the public funding involved.  Few areas of local government are more basic—and can cause more serious harm if done poorly—than fire/EMS services.  Moreover, the sheer amount of public money involved gives the public a strong interest in this delegation. Funds spent on fire protection have historically been among the largest categories of Township disbursements, and recent audits report that those expenditures have been well over a $1,000,000 a year. *2005 Audit*, p. 7; *2007 & 2006 Audit*, pp. 12, 15, 33; *2014 Audit*, pp. 7, 12, 14, 17; *2021 & 2020 Audit,* pp. 4, 17,

18.[4]  The public therefore has an exceedingly strong interest in being able to scrutinize the entity that actually performs that function and actually spends that money. A finding against equivalence would frustrate that, effectively placing the Department's operations and those funds in a black box.

{¶29} *Third*, that result is indirectly, but strongly, supported by precedents predating the functional equivalence standard.

{¶30} One precedent is *State ex rel. Freedom Communs. v. Elida Community Fire Co.*, 82 Ohio St.3d 578, 697 N.E.2d 210 (1998). That case held that a private entity providing fire protection for a township—the same relationship involved here—was a public office. Although *Elida* preceded the functional equivalence test, it has never been overruled. Its factual similarity makes it an extremely persuasive authority, regardless of whether it continues to be binding.

{¶31} The other precedent is *State ex rel. Stys v. Parma Community Gen. Hosp.*, 93 Ohio St.3d 438, 755 N.E.2d 874 (2001). That case rejected public office status based on several facts that are the negative image of this case. One was that the private entity was operationally independent. *Id*. at 441. The Department, in contrast, is dependent upon public resources; it operates out of the Township's facility and mostly with the Township's equipment. Another fact *Parma* considered was that the private entity was not a fiduciary of the public bodies and did not otherwise represent those bodies. *Id*. The Department is a fiduciary of the Township as Township's agent and the Township publicly touts the Department as part of its operations. A third important fact was that the private entity received no tax funding. *Id*. at 443. The Department receives all the proceeds from the Township's fire levy. That those facts point in the opposite direction than they did in *Parma, so Pama* supports an opposite result, that the private entity at issue here is a public office.

{¶32} *Fourth*, the Department's arguments to the contrary are not particularly strong. It places considerable weight on contractual language giving it control over its

---

[4]     The audits sometimes refer to funds spent on fire protection as funds spent on "public safety," a category that includes fire/EMS services. *2005 Audit*, pp. 3, 7; *2007 & 2006 Audit*, p.33; *2014 Audit*, p. 7.

day-to-day operations, but such control is not necessary if the entity is otherwise intertwined with government, as is the case here. *Sheil* 117 N.E.3d 194, ¶¶ 32-35. The Department's assertion that other private fire companies have not been evaluated under Public Records Act tells us nothing about how *it* measures up under those laws. The aspersions the Department casts on the Prosecutor's motives are both unproven and immaterial given that a requester "may inspect and copy a public record * * * irrespective of his or her purpose for doing so." *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186, 186, 610 N.E.2d 997 (1993) (syllabus, internal punctuation omitted).  The Department's policy argument about administrative burdens is speculative. Further, when the functional equivalent test is met "the policy of governmental openness that underlies the Public Records Act is the one that must be honored." *Harm Reduction*, __ Ohio St.3d __, 2023-Ohio-1547, __ N.E.3d __ ¶ 36 (quoting *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936, ¶ 39).

{¶33} The special master therefore recommends that the court find that the Department is the functional equivalent of a public office.

## 2. The quasi-agency doctrine also requires the Department to provide the records requested.

{¶34} The quasi-agency doctrine allows access to records in a private party's possession that are related to a delegated public function. *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19, ¶¶ 16-18; *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 170 Ohio St.3d 239, 2022-Ohio-3990, 210 N.E.3d 518, ¶¶ 6-14.  It is based on the settled premise that public "entities cannot conceal public records by delegating a public duty to a private entity." *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137, 684 N.E.2d 1222 (1997); *State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997*); State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 659, 758 N.E.2d 1135 (2001). Because of that, that quasi-agency doctrine applies even if the private entity is not the functional equivalent of a public office. *Armatas*, 163 Ohio St.3d 304, ¶ 15, n. 3. A requester is entitled to records under

this test if it shows that the records sought are related to a delegated governmental function. *Id.* at ¶ 16.

{¶35} The Prosecutor has made that showing. The records at issue document the compensation paid to individuals who provide fire protection. *Requester's Evidence*, p. 6; *Respondent Munson Fire Department, Inc.'s Notice of filing Documents under Seal*, filed September 13, 2023. R.C. 505.38 imposes the duty to provide fire protection in some form on the Township. That is a governmental function, as discussed above. The Township has delegated that function to the Department, designating the Department as its "agent for fire and Emergency Medical Services." *Respondent's Evidence*, p. 5. The quasi-agency doctrine applies here.

{¶36} That is not changed by the Department's argument that the Prosecutor waived any claim based on the quasi-agency doctrine. That doctrine was pled, albeit under the different label of the "delegation of duties test.," *Complaint*, pp. 2, 38. That was sufficient to put the Department on notice of the quasi-agency claim because the doctrine addresses records related to delegated governmental duties. *Krings*, 93 Ohio St.3d at 659; *Shirey*, 78 Ohio St.3d at 403; *Findlay Publishing*, 80 Ohio St.3d at 137; *Armatas*, 163 Ohio St.3d 304, ¶¶ 14, 16-17; *Ames*, 170 Ohio St.3d 239, ¶ 17.

\* \* \*

{¶37} Given the Department's status as the functional equivalent of a public office and the Prosecutor's showing that the quasi-agency doctrine applies here, the special master recommends that the Department be ordered to produce unredacted copies of the records filed for in camera review or to explain the redactions.

## B. Costs.

{¶38} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office or person responsible for the public records the amount of the filing fee of twenty-five dollars and any other costs associated with the action[.]" The Prosecutor was aggrieved by the Department's withholding of the unredacted records/its failure to explain the redactions. The Prosecutor is therefore entitled to recover its filing fee and all costs incurred in this case, exclusive of attorneys' fees. The Department should bear the balance of the costs of this case.

## III. Conclusion.

{¶39} In light of the foregoing the special master recommends that:

A. Respondent be ordered to produce unredacted copies of the records filed for in camera review or to explain the redactions.

B. Requester recover its filing fee and costs, exclusive of attorney fees.

C. Respondent bear any remaining costs of this case.

{¶40} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD R. MARTI
Special Master

**Filed October 17, 2023**
**Sent to S.C. Reporter 11/1/23**