[Cite as *Newman v. Greater Columbus Arts Council*, 2025-Ohio-471.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| MICHAEL NEWMAN<br><br>Requester<br><br>v.<br><br>GREATER COLUMBUS ARTS COUNCIL, et al.<br><br>Respondents | Case No. 2024-00619PQ<br><br>Special Master Todd Marti<br><br><u>REPORT AND RECOMMENDATION</u> |

{¶1} This matter is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court (1) grant requester's claim for the production of the records generated from 2020 through July 15, 2024, that are responsive to parts 1, 6, and 13 of his records request, (2) award requester his filing fees and costs, (3) require respondent to bear the balance of the costs of this case, and (4) deny all other relief.

## I.   Background.

{¶2} The Greater Columbus Arts Council ("GCAC") and the Columbus Film Commission ("CFC") are or were non-profit corporations. In 2020, CFC became part of GCAC and CFC no longer exists as an independent entity. GCAC has assumed CFC's functions and conducts them in the name of CFC. *Affidavit of Thomas J. Katzenmeyer*, filed December 26, 2024, ¶ 2; *Respondent's Documents Filed Under Seal For In Camera Review*, filed December 5, 2024 ("*In Camera Records*"), p. 404; *Respondent's Documents Filed Under Seal For In Camera Review Pursuant to Court's 12/12/24 Order*, filed December 26, 2024, pp. 1-16.[1]

{¶3} One of those functions is distributing grant funds on behalf of the City of Columbus (the "City"). GCAC has contracts with the City to distribute City funds to entities and individuals who, in GCAC's judgment, will support the arts in the Columbus area. *In*

---

[1] All references to specific pages of the *In Camera Records* are to the Bates stamped pages of that filing.

*Camera Records*, pp. 484, 485, 487, 494, 495, 497, 504, 507, 514, 515, 517, 524, 525, 527; *PQ Miscellaneous*, filed December 26, 2024, *Agreement Between the City of Columbus, Ohio, and the Greater Columbus Arts Council, Inc*. ("*Bed Tax Contract*"), pp. 2, 3, 5.

{¶4} Requester Michael Newman made a public records request to both GCAC and CFC for records related to the CFC's activities and expenditures. GCAC denied that request, asserting that neither it nor CFC are public offices subject to the Public Records Act. Mr. Newman responded with a revised request, and GCAC reiterated its denial. *Complaint,* filed August 8, 2024.

{¶5} Mr. Newman filed this case to challenge the denial. Mediation did not resolve the case, so a schedule was set for the parties to submit evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Order Terminating Mediation*, entered November 19, 2024; *Order*, entered December 12, 2024.

**II. Analysis**.

   **A. Requester's claim for production of records should be granted in part.**

   **1. Requester has not made a clear and convincing case that GCAC is the functional equivalent of a public office.**

{¶6} A private entity can be subject to the Public Records Act if it is the functional equivalent of a public office. *Geauga Cty. Prosecutor's Office v. Munson Fire Dept*., 2023-Ohio-3958, ¶ 6, adopted 2023-Ohio-4437 (Ct. of Cl.). The Supreme Court has considered four primary factors in determining whether a private entity is the functional equivalent of a public office:

- Does the entity perform a governmental function?
- What level of public funding does the entity receive?
- What is the extent of government involvement in or regulation of the entity?
- Was the entity created by the government or to avoid the requirements of the Public Records Act?

*State ex rel. Oriana House, Inc. v. Montgomery,* 2006-Ohio-4854, ¶ 25. An otherwise private entity can be a functional equivalent without all factors suggesting that result, and

no one inquiry is automatically dispositive. *State ex rel. Harm Reduction Ohio v. Oneohio Recovery Found*, 2023-Ohio-1547, ¶ 32.

{¶7} A functional equivalence analysis starts with a presumption that the private entity is not a functional equivalent. That presumption must be overcome with clear and convincing evidence. *Oriana,* 2006-Ohio-4854, ¶ 26.

### a. GCAC performs a governmental function.

{¶8} An entity that distributes public funds pursuant to a contract with a public office performs a governmental function. *Harm Reduction,* 2023-Ohio-1547, ¶¶ 14, 18. GCAC does that. It has two separate contracts with the City that pass City funds onto GCAC for distribution through grants. *In Camera Records*, pp. 484, 485, 487, 494, 495, 497, 504, 507, 514, 515, 517, 524, 525, 527; *Bed Tax Contract*, pp. 2, 3, 5. It has performed that function at all times relevant to this case. As GCAC's website states, "Columbus City Council designated funds to be distributed to the Columbus arts community through [] grants program[s] administered by GCAC" since 1973.[2] This factor supports functional equivalency.

### b. GCAC receives significant amounts of public funding.

{¶9} This factor considers the relative proportion of the private entity's funding that comes from public sources. *Harm Reduction*, 2023-Ohio-1547, ¶¶ 22, 23. The larger the portion, the more likely it is that the entity is the functional equivalent of a public office. GCAC's most recent filings with the IRS report that more than 98% of its funding comes from public offices. *In Camera Records*, pp. 15, 72, 129. That is higher than levels that other courts have found sufficient to support functional equivalence. *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 2012-Ohio-2074, (1st Dist.), ¶ 26 ("We further agree with the magistrate's conclusion that the city's funding of CFMC —which totaled nearly half of its revenue in the fiscal year ending June 30, 2010—is not just significant, but overwhelming"). This factor also supports functional equivalence.

### c. Requester has not shown sufficient government involvement or regulation.

---

[2] Greater Columbus Arts Council, *History*, https://www.gcac.org/about/history/ (accessed January 22, 2025). I asked the parties if they objected to the court taking judicial notice of GCAC's website, and neither party objected. *Order* entered December 12, 2024. I therefore take judicial notice of that website.

{¶10} This factor is phrased in the disjunctive; it considers "the extent of government involvement *or* regulation[.]" *Oriana*, 2006-Ohio-4854, paragraph two of the syllabus (emphasis added). It can therefore be satisfied with proof of *eithe*r a high degree of involvement with government *or* a high degree of regulation by government. *Sheil v. Horton,* 2018-Ohio-5240*,* ¶¶ 32-35 (8th Dist.); *Munson Fire*, 2023-Ohio-3958, ¶ 17. A requester seeking to prove this factor by showing a high degree of involvement with government must show that the private entity is "closely intertwined" with government. A requester relying on the regulation prong of this factor must show significant regulation of the private entity's activities. *Munson Fire*, 2023-Ohio-3958, ¶¶ 17-22; *Martin v. Accel Schools Ohio*, 2024-Ohio-5965, ¶¶ 29-41, adopted 2025-Ohio-6143 (Ct. of Cl.).

{¶11} Mr. Newman has not shown that GCAC is either closely intertwined with the City or that the City significantly regulates GCAC's activities. This factor cuts against equivalence.

### d. There is no evidence that GCAC was formed by government or to evade the Public Records Act.

{¶12} There is no evidence on this point. This factor does not support functional equivalence.

### e. Balancing the factors.

{¶13} The evidence is in equipoise here; Mr. Newman has shown two factors, but failed to show two other factors. That falls short of the clear and convincing evidence required to prove functional equivalence.

{¶14} That result is not changed by the fact that GCAC receives significant public funding. Functional equivalence does not always follow from the fact that most of the private entity's funding comes from public sources. See e.g. *Oriana*, 2006-Ohio-4854, ¶¶ 29-32.

{¶15} That result is reinforced by the fact that Mr. Newman has made a case for relief under R.C. 149.431, as discussed below. While the availability of relief under that statute does not automatically preclude a finding of functional equivalence, its applicability cuts against equivalence. See *Oriana,* 2006-Ohio-4854, ¶¶ 30-32.

### 2. R.C. 149.431 entitles requester to many of the records he seeks.

{¶16} Mr. Newman also asserts that R.C. 149.431 entitles him to the records he seeks. That statute provides, in relevant part, that:

"[A]ny . . . *nonprofit corporation* . . . that *enters into a contract . . . with . . . a political subdivision* or . . . *for the provision of services* shall keep accurate and complete *financial records of any moneys expended in relation to the performance of the services pursuant to such contract . . . Such contract . . . and such financial records* shall be deemed to be public records as defined in division (A)(1) of section 149.43 of the Revised Code and are subject to the requirements of division (B) of that section[.]" (emphasis added).

A non-profit entity covered by R.C. 149.431 may be required to produce records even if it is not the functional equivalent of a public office. *State ex rel. Bell v. Brooks*, 2011-Ohio-4897, ¶¶ 30-41. The evidence establishes all the elements for relief under R.C. 149.431 with regard to most, but not all, of the records Mr. Newman seeks.

{¶17} First, GCAC is a non-profit corporation. That is shown by its articles of incorporation. *Respondent's Documents Filed Under Seal For In Camera Review Pursuant to Court's 12/12/24 Order*, filed December 26, 2024, p. 2.

{¶18} Second, GCAC has entered into contracts with a political subdivision. GCAC has entered into a series of contracts with the City. *In Camera Records*, pp. 483-535; *Bed Tax Contract*. R.C. 2744.01(F) states that municipal corporations are political subdivisions, and the City is a municipal corporation. *Whitlock v. Barga*, 1979 Ohio App. LEXIS 11414, at *1 (10th Dist., May 24, 1979)*. This element is established.

{¶19} Third, those contracts require GCAC to provide various services for Columbus, including the making and administration of grants. *In Camera Records*, pp. 483-535; *Bed Tax Contract*.

{¶20} Fourth, most of the records sought are "financial records of . . . moneys expended in relation to the performance of the services pursuant to . . . contract[s]" or "contract[s]" within the meaning of R.C. 149.431. The term "financial" is not defined, so R.C. 1.42 requires that it be construed according to its common usage. That term is

commonly understood as "relating to money or the way money is managed"[3] and "pertaining to monetary receipts and expenditures."[4]

{¶21} Mr. Newman requested the following records:

"1. All complete Film Columbus financial reports/expense & revenue reports/budget reports from the years 2015-2024 with line item breakdowns showing how this public funding was spent.

2. All Film Columbus annual reports from the years 2015-2024.

3. All travel expense reports with receipts from Film Columbus executive director John Daugherty for the years 2015-2024 with complete line item breakdowns.

4. All Film Columbus expense reports with line item breakdowns for consulting fees, marketing & research studies or reports, and filmmaker production visits for the years 2015-2024.

5. All invoices from 2015-2024 pertaining to all companies, consultants, and independent contractors paid by Film Columbus.

6. All financial reports/expense reports/budget reports and invoices pertaining to the Ohio Film Studio Feasibility Study conducted by SHM Partners in 2023.

7. An actual copy of the 2023 feasibility report conducted by SHM Partners.

8. All expense reports for all pitch competitions and all film summits conducted by Film Columbus from 2015-2024.

9. All expense reports for all workshops conducted by Film Columbus from 2015-2024.

10. All Film Columbus expense reports pertaining to all advocacy efforts for the Ohio Motion Picture Tax Credits from 2015-2024.

11. All Employment/Reviews/Assessments/Valuations of John Daugherty from the years 2015-2024 conducted by GCAC, the Film Columbus Board of Trustees and/or the GCAC Board of Trustees.

12. All bylaws & codes of rules and regulations for the Boards of Trustees for both Film Columbus and GCAC.

---

[3] *The Cambridge Dictionary,*
https://dictionary.cambridge.org/dictionary/english/financial#google_vignette (accessed January 22, 2025).

[4] *Dictionary.com*, https://www.dictionary.com/browse/financial (accessed January 22, 2025).

13. All contracts between Film Columbus, GCAC, and the City of Columbus from 2015-2024." *Complaint*, p. 12.[5]

{¶22} All those records except those requested in parts 2, 7, 11, and 12 are either financial records or contracts and hence must be produced pursuant to R.C. 149.431 and R.C. 149.43(B)(1). The materials sought in parts 2, 7, 11, and 12 are not "financial" records because they do not relate to money, the way money is managed, or monetary receipts and expenditures. Those materials need not be produced.

### 3. Requester has not shown that all the records otherwise available through R.C. 149.431 exist.

{¶23} When a person responsible for public records provides affidavit testimony or comparable evidence that not all the records sought exist, the requester has the burden of coming forward with clear and convincing evidence that additional records do exist. *McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶¶ 22-26. GCAC has provided affidavit testimony that it has no records generated before 2020 and that it has no records of any date responsive to parts 3, 4, 9, and 10 of Mr. Newman's request. *Affidavit of Thomas J. Katzenmeyer*, filed December 26, 2024. Mr. Newman has provided no evidence to the contrary. The court should therefore deny Mr. Newman's request for those materials.

***

{¶24} In sum, I recommend that the court grant Mr. Newman's claim for production of the records requested in parts 1, 6, and 13 of his records request as to records generated between January 1, 2020, until July 15, 2024, the date of his modified request. See *State ex rel. Taxpayers Coalition v. City of Lakewood*, 86 Ohio St.3d 385, 392 (1999) (a record request only entitles requester to records existing at the time of the request).

### B. Requester is entitled to recover his filing fee and costs; respondent should bear the balance of the costs.

{¶25} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office *** the amount of the filing fee *** and any other costs associated with the action[.]" Mr. Newman was aggrieved by GCAC withholding the records covered by R.C. 149.431 that still exist. I therefore recommend that he recover

---

[5] This modified records request supersedes Mr. Newman's prior request. *Ryan v. City of Ashtabula*, 2023-Ohio-621, ¶ 12, adopted, 2023-Ohio-1487 (Ct. of Cl.).

his filing fee and the costs he incurred in this case. I also recommend that GCAC bear the balance of the costs of this case.

## III. Conclusion.

{¶26} In light of the foregoing, I recommend that the court:

A. Grant requesters claim for the production of the records generated from January 1, 2020 through July 15, 2024 that are responsive to parts 1, 6, and 13 of his records request.

B. Award requester his filing fees and costs.

C. Require respondent to bear the balance of the costs of this case.

D. Deny all other relief.

{¶27} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

              _____

              TODD MARTI
              Special Master

**Filed January 23, 2025**
**Sent to S.C. Reporter 2/13/25**